ALL FLORIDA LAND COMPANY and PENINSULAR EXPLORA-
TION COMPANY v. THOMAS MANORS, INC.

186 So. 416.
Opinion Filed January 31, 1939.
Rehearing Denied February 24, 1939.

*McKay, Macarlane, Jackson & Ramsey,* for Plaintiffs in Error;

*B. R. Cisco* and *Emett C. Choate,* and *Julius F. Parker,* for Defendant in Error.

TERRELL, C. J.,—In February, 1937, the plaintiff, who is defendant in error here, filed its declaration in the Circuit Court of Dade County in six counts claiming damages against plaintiffs in error, as defendants, for false and fraudulent representations in connection with the sale of certain lands and interest in lands in Lake County on which oil and gas was then being prospected for; to-wit, by the construction of an oil well. Demurrers and motions for compulsory amendment challenging the sufficiency of the declaration and each count thereof were overruled. The general issue and pleas denying the material allegations of each count of the declaration were proffered and on the issues so made, the cause went to trial resulting in a verdict and judgment for the plaintiff to which the writ of error now under review was prosecuted.

More than fifty assignments of error are brought up for review. As was announced by this Court in a former opinion, it is incomprehensible that so many errors could have been committed by the Court below in the trial of a single cause, but in this case, the declaration was so verbose

and was impregnated with enough prejudicial and immaterial matter, that we are at a loss to say to what extent error appears. It might have been cured in part by charges requested and refused but failing in this, error impinges on error so it becomes impossible to say to what extent the error committed was prejudicial.

In the first place, the case was litigated on the wrong theory. There was a studied attempt to apply old rules to a modern aspect and they could not be made to synchronize. If grandma's old buggy mare had been on the block for sale and the members of the missionary society present to bid and purchase, the episode would have clicked but the rules of law and ethics governing a transaction like that have little application to the guaranties involved in a speculative transaction such as the sale of oil leases. In fact, buying leases in oil wells, and oil lands is, though legitimate, one of the most hazardous and highly speculative businesses in which one can engage. Judged by the numerical history of successes and failures in this field, poker and horse racing can give it Aces and Spades and then win one hundred to one, perhaps better. One trading in such a commodity is presumed to know this and to know that his judgment as to when a well will come in, what it will produce, or how long it will produce is worth about as much as that of the man who offers the stock or the lease for sale.

We do not mean to imply that there are not signs and symbols by which one versed in the oil business may tell that there is a possibility of oil in certain areas and that a prospective well will produce oil but even those are speculative and any representation based on them is speculative and of uncertain value. Any guarantee as to what's in a drilled hole three thousand feet deep, or what's coming out of it, or how long it will continue to come is based on nothing more tangible than hope and one buying oil leases is presumed to know this. One embarking in a speculative

field, must litigate under the rules there controlling. He will not be permitted to barter in a speculative field and then if he lose, litigate his cause in reliance on guaranties pertinent to the sale of non speculative commodities.

The appellee did not purchase any stock in either of the plaintiffs in error. What it did purchase was the right to prospect for oil and gas on about two hundred acres of land near the oil well in question in addition to a very small undivided fractional interest in the land on which the well was located which was also subject to a prior oil lease. No one under the sun could approximate the value of such a purchase. The allegations in the declaration refer generally to the well and not to the lands purchased. In the verdict and judgment rendered, this fact was not taken into consideration as it should have been and due allowance made.

The record discloses that before buying any lands or interest in lands, appellees twice visited the *locus in quo* and inspected the lands in which they purchased an interest. They saw the well being driven and saw it carried to greater depths. They purchased lands near the well of their voluntary selection. In this situation, representations that the well would produce large quantities of oil and gas at its present depth were not actionable and should have been stricken.

This action was brought against the plaintiffs in error. two corporations with which J. Ray Arnold and Joseph M. Smoot are alleged to have been connected. Allegations with reference to Arnold's wealth in lands or money or with reference to the amount of Smoot's commission were prejudicial and had no place whatever in the declaration. Likewise were representations that no stock or interest in the well or the lands would be offered to the general public. Appellee saw this being done in town after town before he

purchased, was on notice of it, and no action is pending against Smoot or Arnold personally.

So far as the record discloses, the parties to this cause were dealing as equals and at arms length. There are actionable allegations in the declaration if proven but they are confused with those which are not actionable and are prejudicial to a fair trial of the cause. The evidence has been examined and is not as clear and convincing as the rule requires as to proof of actionable fraud and misrepresentation.

We have examined the charges given and those requested and refused and find them in both instances to be impregnated with prejudicial error for the reason that the pleadings were cast and trial had been on the wrong theory. To discuss them *seriatim* would require a long opinion that would serve no useful purpose. We have attempted to point out the main respect in which the declaration fails and the fact that a speculative and a non speculative sale are controlled by different bona fides which should be borne in mind both in pleading and in proof.

It is accordingly our conclusion that the judgment should be reversed but with directions to the trial court to permit the pleadings to be recast and a new trial had in line with the views expressed in this opinion.

Reversed.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

THOMAS, J., concurs specially.

BROWN, J., not participating.

THOMAS, J., (concurring specially)—I concur in the conclusion of the court that the above judgment should be reversed because, in my opinion, the evidence does not preponderate in support of the plaintiff's position that there was actionable fraud.

BUFORD, J., concurs.